The original corporators of the General Mutual Insurance Company were the persons who should present *Page 165 
to the commissioners named in the charter applications for insurance to be effected, amounting to at least $500,000. When applications should be received to that amount the company was allowed to organize by choosing trustees. All persons taking policies were to become members, as well as all persons holding certificates of losses under policies issued. The company was to have no subscribed capital. Its entire capital was to consist of premiums on insurance, and the profits arising from the investment of those premiums. The capital thus to be constituted could not be withdrawn until it reached $500,000. All net profits over that amount were subject to division amongst those who took insurances and paid premiums thereon, and the division was to be made on pro rata principles; the share of each number being represented in certificates of profits. The net profits were to be arrived at annually by striking the balance between the premiums earned during the previous year and the income from investments on the one side, and the amount of losses and expenses during the same year on the other. The certificates of profit could not be redeemed until the accumulated profits of the company should amount to half a million of dollars, and then only the excess could ever be applied to that purpose. All the net earnings of the company, therefore, not exceeding that sum, formed the capital, which in case of insolvency must be applied to the payment of debts; and this capital was to be contributed by the members in the form of premiums on their policies. The charter says nothing of subscription or premium notes or of notes of any kind. It speaks of premiums only. Every person taking a policy was bound to pay the established rates of insurance. Doubtless the company might give him a credit and take his time obligations. Any insurance company can do so if not prohibited by law. But if such was the course of dealing in this company, the notes taken nevertheless represented the cash which the insured was bound to pay as the consideration of his policy, and they constituted as much a portion of the capital of the company as if the money had been paid. The notes were to be reckoned as part of the earnings in each year, because they *Page 166 
represented the premiums of that year. Those who gave them were entitled to all the privileges of membership as much as those who paid a cash consideration for their insurances. (Charter, Laws of 1841, 229; amended, Laws of 1842, 138.)
The defendant, in the year 1853, took various policies or renewals of policies from this company, the premiums on which amounted to $2,422.50. Instead of paying these premiums in cash, his notes therefor at one year were accepted by the company. According to the principles of the charter, this sum was the contribution made by him to the capital of the corporation; which in the event of insolvency all the creditors were equally entitled to. If the defendant had made this contribution in cash, it is quite clear he could not withdraw any portion to apply on the debt due from the company to him. He was a creditor in respect to the losses sustained under his policies. He was also a debtor in respect to his notes. But he held still another relation, to wit: that of a member of the company and contributor to its capital. His notes represented that contribution. He is in no better situation than other members, in consequence of having failed to pay his premiums in money. Whatever form his contributory share in making up the fund asssumed, the amount was irrevocably pledged to the payment of debts until that and all like contributions from other insured parties reached the net sum of $500,000 over all losses and expenses; and on a final division, if one should ever be made after paying all debts, the entire fund thus constituted and consolidated would be paid out upon the certificates of profits held by the members. I consider it plain, therefore, that the rules of set-off between debtor and creditor have no application to this case. The defendant is entitled as a creditor to have his losses paid if there are assets enough to pay all the debts of the corporation. But to allow him to set off his notes against those losses would be to suffer him to withdraw so much of the capital and apply it to his own peculiar benefit. This he has no better right to do than any other member has to subtract the portion which he may have contributed, whether in cash or time obligations. A creditor of a corporation who is also a *Page 167 
stockholder cannot demand from the corporation the portion of the capital which he has paid in and apply it to the extinguishment of the debt. If notes are substituted for cash, in making up the capital, the result is still the same. The defendant became a stockholder, so far as such a company can be said to have stockholders, by giving his notes for the amount of his premiums. In respect to those notes he was more than a mere debtor. These obligations, accepted as his contributory share of the capital, entitled him to all the rights and privileges of membership. Like every other member of a moneyed or trading corporation he took the chances both of gain and loss. If we allow him the set-off which he demands, we virtually relieve him from the hazard of loss, because we separate from the fund and return to him all his interest in the common adventure. The result is, he must come in with other creditors in respect to the losses under his policies. He has an equal right with them to be paid out of the assets which went into the hands of the receiver, and their rights are in all respects equal to his. In the administration of those assets he will be benefited by the contributions which other members of the company made to its capital, and they should derive a like benefit from the mutual relations established by the charter. These reciprocal benefits cannot depend on the accident of notes being given for premiums instead of payment in cash, nor on the accident of the note of one dealer or member becoming due and being paid before that of another.
The result is, that the plaintiff was entitled to recover on the notes in question without set-off for losses. The judgment should therefore be affirmed.
All the judges concurring,
Judgment affirmed. *Page 168